**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TYRONE WALKER,**

                                  **Plaintiff,**

    vs.                                                               9:10-cv-01431
                                                                                 (MAD/DEP)

**BRIAN FISCHER, Commissioner of State of
New York Department of Correctional Services;
ROBERT SCHATTINGER, Director of Nutritional
Services, State of New York Department of
Correctional Services; DALE ARTUS, Superintendent,
Clinton Correctional Facility; THOMAS LaVALLEY,
First Deputy Superintendent, Clinton Correctional
Facility; MAX PATNODE, Deputy Superintendent of
Programs, Clinton Correctional Facility; RABBI ALEC
H. FRIEDMANN, Jewish Chaplain, Clinton Correctional
Facility; DAVID LUCIA, Lieutenant, Clinton Correctional
Facility; V. JOHNSON, Facility Health Services Director,
Clinton Correctional Facility; KEVIN HICKS, Sergeant,
Clinton Correctional Facility; R. TRUDEAU, Correctional
Officer, Clinton Correctional Facility; and IMAM
ASSALLAMI FADL, Chaplain, Clinton Correctional Facility,**

                                  **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**TYRONE WALKER**
**94-A-5258**
Clinton Correctional Facility
P.O. Box 2002
Dannemora, New York 12929
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**                **MEGAN M. BROWN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

                              **MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff filed a *pro se* civil rights complaint against a broad array of corrections employees, alleging several deprivations of his civil rights. In his complaint, Plaintiff sets forth several claims alleging violations of his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), as well as the First, Eighth, and Fourteenth Amendments to the United States Constitution. In a February 27, 2012 Report, Recommendation and Order, Magistrate Judge Peebles recommended that the Court grant in part and deny in part Defendants' motion to dismiss and deny Plaintiff's motion for leave to amend his complaint and join additional parties without prejudice to renewal.

Currently before the Court are Plaintiff's objections to Magistrate Judge Peebles' February 27, 2012 Report, Recommendation and Order and his renewed motion to amend and supplement his complaint.

## II. BACKGROUND

**A.  Plaintiff's complaint**

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See* Dkt. No. 1 at ¶ 4. At all times relevant to his claim, Plaintiff was confined in a special housing unit ("SHU") cell within the Clinton Correctional Facility ("Clinton"), located in Dannemora, New York. *See id.* Plaintiff is a Muslim by faith, and suffers from a gastrointestinal condition that causes him to experience chronic constipation and severe internal hemorrhoids. *See id.* at ¶ 18 and Exhibit "5." For these conditions, Plaintiff receives hemorrhoidal cream periodically, is provided with

Metamucil, and has been placed on a Controlled "A" High Fiber Diet. *See id.* at ¶ 18 and Exhibit "1."

Plaintiff's complaint, in large part, centers upon the alleged failure of prison officials to meet his health and religious dietary needs. Believing that the prescribed High Fiber Diet did not provide him with adequate fiber, Plaintiff filed Grievance No. CL-57436-08 on July 14, 2008, requesting a Kosher or a Muslim Halal Diet, which, he claims, would satisfy both his medical needs and religious beliefs. *See id.* at ¶ 19. In response to his grievance, Plaintiff was advised that the High Fiber Diet was created by the DOCCS Division of Nutritional Services in accordance with DOCCS' policies and complies with all state-wide mandates. *See id.* As such, his grievance was denied. *See id.* and Exhibit "2." Plaintiff appealed the denial of his grievance, and his appeals were rejected by both the facility superintendent and by the DOCCS Central Office Review Committee ("CORC"). *See id.* at ¶ 19.

On July 29, 2008, Plaintiff received a communication from Brian LeCuyer, a Nurse Administrator at Clinton, advising him that if he was not satisfied with his existing diet, he should complete a refusal form requesting that he be removed from the diet and that he could speak with the appropriate religious official regarding his desire for a Kosher or Muslim Halal Diet. *See id.* at ¶ 20 and Exhibit "3." On July 30, 2008, Plaintiff wrote to the Assistant Director of Nutritional Services, reiterating his challenge to the adequacy of the High Fiber Diet, as set forth in Grievance No. CL-57436-08. *See id.* at ¶ 25 and Exhibit "4." Plaintiff did not receive a response to this communication. *See id.*

On August 1, 2008, Plaintiff made a written request to Defendant Rabbi Alec H. Friedmann, the Jewish Chaplain at Clinton, requesting that he be placed on a Cold Alternative Diet, or Kosher Diet, to address his health issues, explaining that the diet would be consistent

3

with his religious beliefs. *See id.* at ¶ 22 and Exhibit "5."  On August 6, 2008, Defendant Friedmann wrote back to Plaintiff, denying his request and recommending that he instead accept a Religious Alternative Meal ("RAM").  *See id.*  In that communication, Defendant Friedmann informed Plaintiff that the RAM would meet all of the biblical requirements of his chosen religion as a Muslim.  *See id.* and Exhibit "5."

In September of 2008, after complaining to several prison officials concerning the diet denial, including Defendant Dale Artus, Superintendent of Clinton, Defendant Max Patnode, Clinton Superintendent of Programs, and Defendant Brian Fischer, DOCCS Commissioner, Plaintiff voluntarily removed himself from the Controlled "A" High Fiber Diet.  *See id.* at ¶¶ 23-30 and Exhibit "12."

In his complaint, Plaintiff also complains that he was denied the opportunity to observe weekly religious Jumuah sermons, also referred to as Khutbah, by closed circuit television from his SHU cell.  *See id.* at ¶¶ 35-42.  In an effort to obtain access to those weekly religious sermons, Plaintiff filed grievances on October 21, 2008, July 1, 2010, and September 21, 2010; sent a complaint letter on July 28, 2008 to Defendant Artus; forwarded a written complaint to Defendant Fischer on August 25, 2008; sent three letters, dated February 10, 2009, February 23, 2009, and March 2, 2009, to Defendant Imam Assallami Fadl; and lodged a complaint, dated September 21, 2010, with Clinton Superintendent, Defendant Thomas LaValley.  *See id.* and Exhibit "16-22."

Plaintiff further asserts a retaliation claim, alleging that after complaining about the failure of prison officials to provide him with the requested diet and access to Jumuah sermons, he was moved from his cell location to another, where he experienced significantly worse conditions and

4

was subjected to excessively frequent cell searches.  *See id.* at ¶¶ 43-50.[1]  Plaintiff also claims that his due process rights were violated in connection with his transfer to a different cell.  *See id.*

Finally, Plaintiff claims that, on October 2, 2010, he was denied a request for a sweet breakfast[2] as part of his religious services and that he was provided different food from that offered to Muslim inmates in the general prison population in celebration of the Ramadan Feast.  *See id.* at ¶¶ 68-70.  Plaintiff claims that the religious feast provided to him in the SHU consisted of rice, fish, mess hall cabbage, and mess hall beans, and did not include other foods, such as lamb, bean pie, and chicken, which were provided to Muslims in the general population in celebration of the Ramadan Feast.  *See id.* at ¶ 70.  In anticipation of the 2010 religious feast, and after having been denied his sweet breakfast in 2009, Plaintiff wrote to Defendant LaValley on September 22, 2010 concerning the matter, hoping to preemptively avoid a similar denial for that year.  *See id.* at ¶ 68 and Exhibit "48."  On October 3, 2010, after not receiving his sweet breakfast as requested, Plaintiff filed a grievance and sent letters to Defendants Fischer and LaValley, complaining of the failure to provide him with the requested sweet breakfast.  *See id.* at ¶ 70 and Exhibit "49."

Plaintiff commenced this action on November 23, 2010.  *See* Dkt. No. 1.  In his complaint, Plaintiff asserts that his religious freedom rights under the RLUIPA and First Amendment were infringed because of Defendants' interference with his ability to practice his chosen religion, including through denial of a sweet breakfast and proper feast, the opportunity to observe Jumuah

---

[1] Apparently, the cell searches, characterized by Plaintiff as excessive, revealed the presence of contraband on August 14, 18, 27, and 28, 2008, September 4, and 19, 2008, and November 18, 2008, as evidenced by the issuance of contraband receipts to Plaintiff.  *See* Dkt. No. 1 at ¶ 59.

[2] The sweet breakfast that Plaintiff refers to generally consists of a banana, a donut, coffee cake, soda, and other beverages.  *See* Dkt. No. 1 at ¶ 70.

sermons, and the denial of a Kosher Diet. *See id.* Plaintiff further claims that he was unlawfully retaliated against for voicing his complaints and that he was subjected to cruel and unusual punishment. *See id.*

**B.     Magistrate Judge Peebles' Report, Recommendation and Order**

In his February 27, 2012 Report, Recommendation and Order, Magistrate Judge Peebles recommended that the Court dismiss several Defendants and several of Plaintiff's claims. *See* Dkt. No. 40. First, Magistrate Judge Peebles recommended that the Court grant Defendants' motion as to Defendant Fischer for his lack of personal involvement, but deny the motion as to Defendants Artus and LaValley on the same ground. *See id.* at 16-18. Second, Magistrate Judge Peebles recommended that the Court find that Plaintiff failed to state a plausible First Amendment and RLUIPA deprivation claim associated with the refusal of prison officials to provide him with a Kosher Diet in lieu of the prescribed Controlled "A" High Fiber Diet. *See id.* at 20. Magistrate Judge Peebles found that "Plaintiff does not appear to contend that his Controlled 'A' Diet does not comport with his religious beliefs as a Muslim. Instead, he argues that the Cold Alternative (Kosher) Diet would also be consistent with his religious beliefs, and should be made available to him for health reasons." *See id.*

Third, Magistrate Judge Peebles found that Plaintiff was also asserting an Eighth Amendment deliberate indifference claim by alleging that the Controlled "A" High Fiber Diet did not meet his medical needs. *See id.* at 21-22. He recommended that the Court find that Plaintiff failed to allege facts sufficient to establish either the objective or subjective element of this claim. *See id.* at 23-27. Fourth, Magistrate Judge Peebles found that "Plaintiff's allegations regarding the denial of religious meals on two isolated occasions are insufficient to meet his burden of

6

establishing [that] defendants' conduct infringes on his sincerely held religious beliefs under either the First Amendment or the RLIUPA." *See id.* at 32 (citations omitted). Further, the Report found that the fact that Plaintiff was not provided with the same Ramadan Feast meal as inmates in the general population does not trigger the protections of the First Amendment or the RLUIPA. *See id.* at 33. Magistrate Judge Peebles did, however, find that the portion of Plaintiff's free exercise claim stemming from the alleged ongoing refusal of prison officials to broadcast Jumuah sermons to his SHU cell "could be regarded as a sufficiently serious deprivation to state a plausible free exercise claim." *See id.* at 33-34 (citations omitted).

Fifth, regarding Plaintiff's harassment claims against Defendants Hicks and Trudeau, Magistrate Judge Peebles found that most of Plaintiff's allegations amount to nothing more than taunting or threats, which are insufficient to support a cognizable section 1983 claim. *See id.* at 35-36. Further, the Report found that "the mere allegation that a false misbehavior report has been issued to an inmate similarly does not implicate unconstitutional conduct." *See id.* at 36-37 (citations omitted). Sixth, Magistrate Judge Peebles recommended that the Court find that Plaintiff's procedural due process claims against Defendant Lucia should be dismissed because the disciplinary penalty as a result of the charges leveled against him was never imposed, Plaintiff was not deprived of a cognizable liberty interest. *See id.* at 37-38.

Seventh, regarding Plaintiff's equal protection claim based on Defendants' refusal to provide him with the requested Kosher Diet, Magistrate Judge Peebles found that this claim should be dismissed because Plaintiff's "complaint lacks any factual allegations suggesting that the failure to provide [him] with the requested Kosher Diet was based upon intentional or purposeful discrimination directed at an identifiable suspect class." *See id.* at 39-40. Eighth, the

7

Report recommended that the Court find that it is premature to grant Defendants qualified immunity at this juncture. *See id.* at 43.

Ninth, Magistrate Judge Peebles recommended that Plaintiff be given leave to amend with respect to the claims for which dismissal was recommended. *See id.* at 44. And, finally, Magistrate Judge Peebles denied Plaintiff's motion for leave to amend/join parties in light of his failure to satisfy the requirements set forth in Local Rule 7.1(a)(4). *See id.* at 46. Specifically, Magistrate Judge Peebles held that Plaintiff submitted a proposed pleading "which adds to, but does not replace, his amended complaint[,]" and that "various of the allegations set forth in the proposed amended complaint purport to alter factual allegations contained within plaintiff's initial complaint." *See id.*

**C.    Plaintiff's objections**

On March 16, 2012, the Court received Plaintiff's objections to Magistrate Judge Peebles' Report, Recommendation and Order. *See* Dkt. No. 41. In his objections, Plaintiff first argues that Magistrate Judge Peebles erred in finding that the denial of a Kosher Diet did not violate his First and Eighth Amendment rights or his rights under the RLUIPA. *See id.* at 7.[3] Plaintiff claims that the Report incorrectly provides that "'Plaintiff does not appear to contend that his Controlled "A" Diet does not comport with his religious beliefs as a Muslim.'" *See id.* (quotation omitted). Citing to the exhibits attached to his complaint, Plaintiff alleges that "'[e]ating the High Fiber Diet as it is, is a substantial burden on me because this food is in violation of my religious belief, and it's not producing the results I need to maintain my health.'" *See id.* (quoting Dkt. No. 1-1 at

---

[3] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

8

Exhibit "4").  Plaintiff claims that the large amounts of meat contained in the High Fiber Diet are not processed in accordance with his religious beliefs, but meats contained in Kosher or Halal (permissible) Muslim meals would be.  *See id.* at 8.

Moreover, Plaintiff alleges that the fact that he remained on the High Fiber Diet for over one year and that his colonoscopy still showed that he had "several internal hemorrhoids from his constipation and irregularity is proof the High Fiber Diet was ineffective and inadequate." *See id.* at 9.  Plaintiff claims that the Court should focus not only on the "several internal hemorrhoids" when determining if he has a serious medical need, but on the fact that the ineffective treatment, causing these "perpetual" hemorrhoids, makes him more likely to get colon cancer in the future. *See id.* at 10.

Next, Plaintiff claims that the RLUIPA and the First Amendment's Free Exercise Clause provide that inmates must be given meals that conform to their religious beliefs.  *See id.* at 11. Plaintiff alleges that, by denying him the only religious meal options that met his dietary needs as well as his religious beliefs violated his rights.  *See id.* at 11-12.  Finally, Plaintiff asks that the Court reserve decision on Magistrate Judge Peebles' Report, Recommendation and Order "until it can be accessed with the facts contained in the amended and supplemental complaint as a whole." *See id.* at 12-14.

### III. DISCUSSION

**A.   Standard of review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  However,

9

when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

In a rule 12(b)(6) motion to dismiss, the court must accept as true all of the factual allegations in the complaint, which is deemed to include any written instrument attached to the complaint as an exhibit, any materials incorporated into it by reference, and any other documents that are integral to it. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted). Moreover, the court must draw all reasonable inferences from those factual allegations in the plaintiff's favor. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quotation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to it nor incorporated by reference into the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). Dismissal will only be granted by the court if it "appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir. 1996).

So read, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim to relief is plausible on its face "when the [P]laintiff pleads fact[s] . . . that allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

When a dismissal is sought against a *pro se* litigant, the court will afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation and citations omitted). The submissions of a *pro se* litigant are to be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Id*. at 475 (internal quotation and citations omitted).

**B.     Plaintiff's First Amendment and RLUIPA claims**

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause" (citing *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804 (1974)). Thus, for example, under accepted free exercise jurisprudence, inmates are guaranteed the right to participate in congregate religious services under most circumstances. *See, e.g., Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citing cases).

The right of prison inmates to exercise their religious beliefs, however, is not absolute or unbridled, but instead is subject to valid penological concerns, including those relating to institutional security. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Salahuddin*, 993 F.2d at 308. For example, a determination of whether an inmate's constitutional rights have

11

been infringed by the refusal to permit his attendance at a religious service hinges upon the balancing of the inmate's First Amendment free exercise right against the institutional needs of officials tasked with the increasingly daunting task of operating prison facilities. This determination is "one of reasonableness, taking into account whether the particular [act] affecting [the] constitutional right . . . is 'reasonably related to legitimate penological interests.'" *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987)).

Undeniably, the reach of the First Amendment's free exercise clause extends beyond mere attendance at congregate religious services to other aspects of prison life including, pertinently, that of an inmate's diet and participation in religious meals. *See McEachin v. McGuinnis*, 357 F.3d 197, 204–05 (2d Cir. 2004); *Ford*, 352 F.3d at 597. Ordinarily, the Eighth Amendment establishes as a constitutional minimum the requirement that inmates be provided with nutritionally adequate meals; provided this threshold is met, prison officials otherwise retain considerable discretion in determining dietary constituents. *See Word v. Croce*, 169 F. Supp. 2d 219, 226 (S.D.N.Y. 2001). This requirement, however, is on occasion narrowed by the First Amendment's free exercise clause, which is broad enough to include an inmate's "clearly established" right "to a diet consistent with his or her religious scruples." *Ford*, 352 F.3d at 597; *see also Bass v. Coughlin*, 976 F.2d 98, 99 (2d Cir. 1992). "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin*, 357 F.3d at 203.

In the present matter, Plaintiff sent a letter to Defendant Friedmann requesting that he be placed on the Cold Alternative Diet. *See* Dkt. No. 1-1 at 27. Defendant Friedmann responded that, because he is Muslim, he is not eligible for the Cold Alternative Diet. *See id.* at 28.

12

Defendant Friedmann, however, informed Plaintiff that the Religious Alternative Meal ("RAM") meets "Biblical kosher standards," and, therefore, "meets Moslem dietary requirements." *See id.* Defendant Friedmann went on to explain to Plaintiff that the RAM diet is served in the Mess Hall and that, if he is keeplocked, Plaintiff can "obtain it by requesting the form from your Block CO." *See id.* Despite being presented with this option which would have satisfied Plaintiff's religious dietary requirements, Plaintiff declined the option.

"Courts have consistently held that DOCCS' Religious Alternative Meal is sufficient to sustain Muslim prisoners' good health without violating dietary laws and that a strictly Halal diet is not required." *DeBlasio v. Rock*, No. 9:09-CV-1077, 2011 WL 4478515, *20 (N.D.N.Y. Sept. 26, 2011) (citing *Muhammad*, 98 F. Supp. 2d at 343-44 (collecting cases)). Even assuming that some parts of Plaintiff's High Fiber Diet did not comport with his religious beliefs,[4] as he claims in his objections, Plaintiff was offered a diet that meets his religious dietary requirements, but declined the offer. As such, Plaintiff has failed to state a plausible First Amendment and RLUIPA deprivation claim associated with the refusal of prison officials to provide him with a Kosher Diet in lieu of the prescribed Controlled "A" High Fiber Diet.

Moreover, Magistrate Judge Peebles correctly found that Plaintiff's allegations regarding the denial of religious meals – *i.e.*, sweet breakfast – on two isolated occasions and his contention that his Ramadan Feast menu was not identical to the menu offered to non-SHU inmates are insufficient to state a plausible claim that Defendants' conduct infringed on his sincerely held religious beliefs under either the First Amendment or the RLUIPA. *See Deblasio*, 2011 WL

---

[4] The Court notes that Plaintiff's complaint does not state that the Controlled "A" High Fiber diet does not comport with his religious dietary needs. Plaintiff does, however, make this claim in the complaint letter he sent to Defendant Friedmann, which he attached as an exhibit to his complaint. *See* Dkt. No. 1-1 at 28.

13

4478515, at *18. Significantly, Plaintiff does not claim that his Ramadan Feast menu was inconsistent with his religious beliefs, just that it was different than that which was offered to inmates in the general population. This claim clearly falls far short of establishing a First Amendment or RLUIPA violation.

The portion of Plaintiff's religious exercise claim growing out of the alleged ongoing refusal of prison officials to broadcast Jumuah sermons to his SHU cell, however, does plausibly allege a sufficiently serious deprivation to state a free exercise claim. *See, e.g., Crawford v. Clarke*, 578 F.3d 39, 43-44 (1st Cir. 2009).[5] As such, the Court finds that Magistrate Judge Peebles correctly recommended that the Court should deny Defendants' motion as to this claim as to Defendants Fadl, Artus and LaValley.

**C.     Eighth Amendment claims**

Plaintiff's claims relating to his meals are also asserted under the Eighth Amendment. The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition includes any "unnecessary and wanton infliction of pain" on those who have been convicted of crimes. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). Nevertheless, the United States Supreme Court has recognized that not "every injury" a prisoner suffers "translates into constitutional liability for prison officials." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

---

[5] The Court notes that, although Plaintiff has alleged a plausible free exercise claim, courts in the Second Circuit have granted motions for summary judgment as to similar claims, considering the burden placed on the prison officials in accommodating SHU inmates, the ability of SHU inmates to get counseling from a member of the ministerial staff on a weekly basis, and the prison's legitimate-penological interest in denying these requests. *See, e.g., Smith v. Artus*, No. 9:07-CV-1150, 2010 WL 3910086, *22-*23 (N.D.N.Y. Sept. 30, 2010).

Prisons are required under the Eighth Amendment to provide for the basic human needs of those incarcerated, including "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curium) (citation and internal quotation marks omitted). The deprivation must be sufficient to create a serious danger to the health of the inmate. *See, e.g., Beckford v. Portuondo*, 151 F. Supp. 2d 204, 213 (N.D.N.Y. 2001) (finding a deprivation of two of three meals per day for eight days created an issue of material fact sufficient for Eighth Amendment claim to survive summary judgment); *Moss v. Ward*, 450 F. Supp. 591, 596-597 (W.D.N.Y. 1978) (finding the denial of food for four consecutive days and reduced food for three days thereafter sufficient to violate prisoner's Eighth Amendment rights). Where a particular diet is medically required, denial of a smaller number of meals may be sufficient in some circumstances. *See Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) (citing *Robles*, 725 F.2d at 15-16).

In the present matter, Plaintiff's Controlled "A" High Fiber Diet was prescribed for him by the medical personnel at Clinton. Although Plaintiff's complaint alleges that he suffers from constipation and internal hemorrhoids, the medical records demonstrate that he received constant medical attention for those conditions. *See* Dkt. No. 1-1 at Exhibit "1." Magistrate Judge Peebles correctly concluded that the complaint does not allege facts from which one could conclude that his medical conditions are sufficiently serious to meet the objective requirements of an Eighth Amendment claim. *See Lowman v. Perlman*, No. 9:06-CV-422, 2008 WL 4104554, *5 (N.D.N.Y. Aug. 29, 2008); *Cabassa v. Gummerson*, No. 01-CV-1039, 2006 WL 1559215, *9-*10 (N.D.N.Y. Mar. 30, 2006); *Kendall*, 2004 WL 1752818, at *6.

Further, even assuming that Plaintiff has met the objective element, Plaintiff has failed to allege facts suggesting a plausible claim that any Defendants were subjectively indifferent to his serious medical needs. Although Plaintiff complains that the Controlled "A" High Fiber Diet does not meet his needs because of the lack of peanut butter and the reduction of bread from twelve slices to eight, as well as the lack of desserts, Plaintiff does not point to any adverse impact upon his health other than to allege, in conclusory terms, that his condition requires that he be provided with food with a higher fiber content than what he receives under the Controlled "A" High Fiber Diet. Defendant Johnson, however, responded to Plaintiff's requests by stating that he already receives a diet high in fiber, which is further supplemented by Metamucil and, therefore, that Plaintiff did not require additional fiber for his medical condition. *See Taylor v. Chalom*, No. 9:10-CV-1494, 2011 WL 6942891, *8 (N.D.N.Y. Dec. 13, 2011) (holding that when a plaintiff alleges nothing more than a mere disagreement with the treatment he received, the plaintiff has failed to satisfy the subjective element of the deliberate indifference test) (citations omitted).

Based on the foregoing, the Court finds that Magistrate Judge Peebles corrected recommended that the Court should grant Defendants' motion as to Plaintiff's Eighth Amendment claims. At best, Plaintiff alleges malpractice against Defendants, which is insufficient to support an Eighth Amendment violation.

**D.     Plaintiff's remaining claims**

In addition to the claims discussed above, Plaintiff also asserted harassment claims against Defendants Hicks and Trudeau, a due process claim against Defendant Lucia, and an equal protection claim based upon Defendants' refusal to provide him with the requested Kosher Diet. Magistrate Judge Peebles recommended that the Court dismiss each of these claims and Plaintiff

16

did not object to his recommendation.  Having reviewed these causes of action and Magistrate Judge Peebles' Report, Recommendation and Order, the Court finds that Magistrate Judge Peebles' correctly determined that Plaintiff failed to allege facts that plausibly state these causes of action.

**E.     Amendment of the Complaint**

Following Defendants' motion to dismiss, Plaintiff moved for leave to amend his complaint and to join two additional parties.  *See* Dkt. No. 36.  In his motion, Plaintiff seeks to add Corrections Captain Facteau and Sergeant Delutis as new defendants, and to assert additional claims, including a retaliation claim based upon events not recounted in his initial complaint, and several of which he claims have occurred since the commencement of this action.  *See id.*

Magistrate Judge Peebles denied Plaintiff's motion for leave to amend because of his failure to comply with Local Rule 7.1(a)(4).  *See* Dkt. No. 40 at 46.  Specifically, Magistrate Judge Peebles found that Plaintiff's proposed amended pleading simply adds to, but does not replace his amended complaint and that Plaintiff's proposed amended complaint alters factual allegations contained within his initial complaint.  *See id.*  As such, Magistrate Judge Peebles recommended that the Court deny Plaintiff's motion to amend and/or supplement his complaint, and to join additional parties, without prejudice to renewal upon filing a pleading in conformity with the Local Rules.  *See id.* at 47.

On the same day that Plaintiff filed his objections to Magistrate Judge Peebles' Report, Recommendation and Order, Plaintiff renewed his motion for leave to file an amended and supplemental verified complaint and to add additional defendants.  *See* Dkt. No. 42.  Despite Magistrate Judge Peebles' instruction regarding the requirements for filing an amended complaint,

17

Plaintiff again fails to abide by the Local Rules.  The renewed proposed amended pleading is nearly identical to the proposed amended pleading that Magistrate Judge Peebles found was not in conformity with the Local Rules.  *Compare* Dkt. No. 36-2; *with* Dkt. No. 42-2.  Plaintiff's renewed proposed amended pleading again fails to supersede the original pleading in all respects, and incorporates his original pleading.  *See* Dkt. No. 42-2.  Plaintiff's renewed proposed amended pleading begins at paragraph eighty ("80") – where the original complaint ends – and asks the Court to change facts contained in the original complaint.  *See id.* at ¶¶ 82-82.

     A motion to amend a pleading is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Local Rules of the Northern District of New York provide, in pertinent part, that amended pleadings must be complete pleadings which will supersede the original in all respects.  *See* N.D.N.Y. L.R. 7.1(a)(4).  The Local Rules further state that a "party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference."  *Id.*  One of the purposes of the requirement that an amended complaint be itself a complete pleading, is to ensure that all of the allegations asserted against the defendant(s) are contained in a single document, thereby reducing the likelihood that a party will overlook one or more allegations against him.  Moreover, this requirement eliminates the confusing nature of "piecemeal" amended complaints.  *See Chapdelaine v. Keller*, No. 9:95-CV-1126, 1999 WL 34998130, *1 (N.D.N.Y. Sept. 28, 1999) (citation omitted).

     Based on the foregoing, the Court finds that Plaintiff's renewed proposed amended pleading is not a proper pleading because it is not a **complete pleading** which completely replaces his original complaint, as required by the Local Rules.  As such, the Court denies

18

Plaintiff's motion to amend and/or supplement his complaint without prejudice to renewal upon filing a complaint that is in conformity with the Local Rules.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, Magistrate Judge Peebles' Report, Recommendation and Order and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Peebles' February 27, 2012 Report, Recommendation and Order is **ADOPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Plaintiff's motion to amend and/or supplement his complaint is **DENIED without prejudice** to renewal; and the Court further

**ORDERS** that all further pretrial matters are referred to Magistrate Judge Peebles; and the Court further

**ORDERS** that the Clerk of the Court shall serve this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 26, 2012
 Albany, New York

*[signature]*
Mae A. D'Agostino
U.S. District Judge